SAMUEL ALBA (0031)
RODNEY R. PARKER (4110)
SNOW CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145
Telephone: (801) 521-9000

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GIL MILLER, not individually, but in his capacity as Court-appointed receiver; DAVID N. BATEMAN, not individually, but in his capacity as Court-appointed receiver; ROCKY MOUNTAIN ADVISORY, LLC, a Utah limited liability company, not individually, but in its capacity as Court-appointed receiver, <br><br> Plaintiffs, <br><br> v. <br><br> WENDELL JACOBSON, and ALLEN JACOBSON, <br><br> Defendants. | MOTION TO STAY DISCOVERY <br><br> Consol. Case No. 2:19-CV-956-BSJ <br><br> (Member Case No. 2:20-cv-0013-BSJ) |

## **RELIEF SOUGHT AND SUPPORTING GROUNDS**

The Jacobsons move the court for an order staying all further activity in these consolidated cases, until the court has ruled on the pending motions to remand and to dismiss. If federal jurisdiction survives those motions, then defendants further move for an

order staying the consolidated cases entirely, until the criminal prosecution of the Jacobsons has concluded. An initial stay is appropriate because there are serious issues concerning this court's lack of subject matter jurisdiction that should be resolved before any further activity, including discovery on the merits, takes place. Those jurisdictional issues are set forth in more detail in the Jacobsons' pending motion to dismiss ([Dkt. No. 44](#)) and in their motion to remand member case no. 2:20-cv-0013 to state court ([Dkt. No. 26](#)). A stay of discovery is also necessary to protect the Jacobson's Fifth Amendment rights in pending state criminal proceedings against them.

## **FACTS**

1. On June 22, 2015, the Utah Attorney General charged W. Jacobson and A. Jacobson with fifteen counts of securities fraud and one count of pattern of unlawful activity, based on conduct that allegedly occurred between 2009 and 2011.

2. Prior to filing charges, the State retained defendants (collectively "RMA") to perform forensic accounting services and act as an expert witness against the Jacobsons.

3. The State paid RMA least $48,000 for its work on the prosecution. The State had extensive interactions with RMA both before and after the criminal case was filed. Those interactions were outside of the receivership, and they violated RMA's fiduciary and contractual obligations to the Jacobsons.

4. The State in the criminal case conceded that RMA shared confidential information which Mr. Miller gained from a confidential conversation he had with W. Jacobson. Such conversations would only have occurred during the 75-day engagement with RQN.

5. Upon information and belief, the State's prosecution of the Jacobsons relied directly on RMA's knowledge and understanding of the Jacobsons' business enterprises, including confidential information and documentation RMA obtained in the course of its prior engagement with RQN and the Jacobsons.

6. Indeed, RMA was previously hired by RQN and the Jacobsons to perform the very analysis that later formed the basis of the Jacobsons' prosecution by the State.

7. The near-absolute reliance of the State upon RMA's knowledge, analysis, and expert opinions is demonstrated by the preliminary hearing held before a Utah state court judge on December 14-17, 2015.

8. Prior to the preliminary hearing, Mr. Miller met with the State and its witnesses. RMA also prepared exhibits in preparation for the preliminary hearing demonstrating, among other things, the flow of money. The State has subsequently acknowledged that Mr. Miller attended "most if not all" of the meetings with investor witnesses prior to the preliminary hearing.

9. The apparent purpose for Mr. Miller's meeting with investor witnesses was to prepare them to give testimony against the Jacobsons at the preliminary hearing and at trial. Mr. Miller "gave investors a more complete and accurate understanding of the charges and the reason their . . . testimony was needed[.]" Mr. Miller also explained his theory of the case and view of the evidence, which arose from or was informed by information and documentation he obtained as a confidential expert consultant for the Jacobsons.

10. Mr. Miller testified against the Jacobsons on behalf of the State, offering expert opinions about the nature of the financial practices recounted by the investor witnesses and the solvency of the Jacobsons' businesses.

11. Mr. Miller testified at the preliminary hearing as the State's "expert in the field of accounting and also in the field of forensic accounting." He testified as to the alleged flow of individual investments through the Jacobsons' businesses, the alleged commingling of funds, and his own questionable theories regarding the Jacobsons' business practices.

12. He also presented summary exhibits allegedly summarizing voluminous financial records from the Jacobsons' businesses.

13. Critical to the State's theory of the case was its allegation that the Jacobsons' business enterprise was insolvent at the time of the transactions with particular investor witnesses, and, in support of this theory, the State relied principally on the testimony and analysis of Mr. Miller.

14. Based primarily upon Mr. Miller's testimony and RMA's work, the Jacobsons were bound over to stand trial on multiple criminal counts.

15. The Jacobsons moved the court in the criminal case to disqualify RMA as the State's expert witnesses. The court granted the motion on November 14, 2017 in written Findings of Fact, Conclusions of Law and an Order.

16. Also on November 14, 2017, the court in the criminal case entered written Findings of Fact, Conclusions of Law and Order granting RQN's motion to quash subpoenas to RMA that sought the RQN work product in the possession of Defendants.

17. On October 25, 2019, the state court barred Mr. Miller from testifying in any capacity in the criminal case due to his conflicts of interest.

18. RMA is neither a party nor an alleged victim in the Jacobsons' criminal case.

19. RMA has taken the position that it lacks standing to participate or be heard in the criminal case. However, throughout pretrial proceedings in the criminal case, RMA, through its counsel, has made appearances and filed documents that have consistently sought to undermine the Jacobsons' defenses and prevent the Jacobsons from receiving a fair trial, and have caused the Jacobsons to incur considerable added expense.

20. Examples of RMA's filings include: October 10, 2017 Objection to Proposed Findings of Fact, Conclusions of Law and Order Disqualifying Rocky Mountain Advisor and its Representatives as State's Expert; October 10, 2017 Objection to Proposed Findings of Fact and Conclusions of Law and Order on RQN's Motion for Protective Order; November 2, 2017 Reservation of Rights Concerning Defendants' Joint Opposition to State's Motion to Reconsider District Court's Findings and Order Disqualifying Mr. Miller and Rocky Mountain Advisory; November 16, 2018 Objection to Proposed Order Denying Defendants' Joint Motion to Disqualify the Attorney General's Office; and November 25, 2019 Objection to Proposed Order Denying Defendants' Joint Motion to Dismiss or in the Alternative to Quash Bindover.

21. The Jacobsons moved to dismiss the criminal charges for Fifth and Sixth Amendment violations by involving RMA at every level of the case. The court denied the motion, asserting the Jacobsons' constitutional rights could be preserved by mandating that the state create and implement a taint review process to cull out all evidence tainted

by RMA's participation, leaving the Jacobsons the right to challenge any remaining evidence for taint.

22. Given the Covid-19 pandemic and the findings and orders by various federal and state agencies and authorities, including the order of the Utah Supreme Court, the state court continued the next status scheduling conference to May 18, 2020 at 9:00 a.m.

## **ARGUMENT**

I. A STAY PENDING THE OUTCOME OF THE STATE CRIMINAL PROCEEDINGS IS NECESSARY TO PROTECT THE JACOBSONS' FIFTH AMENDMENT RIGHTS

"The Constitution does not generally require a stay of civil proceedings pending the outcome of criminal proceedings, absent substantial prejudice to a party's rights. . . . When deciding whether the interests of justice seem to require a stay, the court must consider the extent to which a party's Fifth Amendment rights are implicated." *Orbit Irr. Prod., Inc. v. Sunhills Int'l, LLC*, 2012 WL 5397608, at *1 (D. Utah Nov. 2, 2012) (citing *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009)). "A district court may also stay a civil proceeding in deference to a parallel criminal proceeding for other reasons, such as to prevent either party from taking advantage of broader civil discovery rights or to prevent the exposure of the criminal defense strategy to the prosecution." *Kreisler*, 563 F.3d at 1080-81.

While the decision whether or not to grant a stay falls within the court's discretion, "[f]ederal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action . . . ." *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970). In deciding whether to grant a stay, the trial

courts of this district have applied a six-factor test first articulated in *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995):

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

886 F. Supp. at 1138. *See, e.g.*, *M.D. Diet Weight Loss & Nutrition Clinic, L.C. v. Absolute Weight Loss & Nutrition Ctr., LLC*, No. 2:05–CV–605, 2006 WL 2471524, at *1 (D. Utah Aug. 24, 2006); *Orbit Irr. Prod.*, 2012 WL 5397608, at *1.

In this case, those six factors weigh in favor of granting the stay to protect the Jacobsons' Fifth Amendment rights and to prevent the exposure of their criminal defense strategy to the prosecution.

    A.    <u>Overlap of issues</u>.

The overlap of issues between the criminal case and this case is substantial. RQN, counsel for the Jacobsons during the original SEC investigation, hired Mr. Miller and RMA to assist RQN in its provision of legal services to the Jacobsons. The engagement with RMA included conducting confidential forensic investigation and accounting consultation to the lawyers on behalf of the Jacobsons. Given the nature of the SEC investigation, RQN brought into the consultation two experienced criminal defense attorneys to help protect the Jacobsons' rights and interests. RMA and the RQN criminal defense team consulted with each other on defense strategy. The State's prosecution of the Jacobsons arose from the same facts, the very same conduct and transactions, for which the

SEC was investigating them, for which the Jacobsons hired RQN (including the criminal defense team) and for which RQN engaged RMA to perform confidential, defense consulting services on behalf of the Jacobsons.

RMA's engagement with RQN on behalf of the Jacobsons carried with it express contractual confidentiality requirements and legal and ethical duties to the Jacobsons, including fiduciary duties of confidentiality and loyalty. In violation of those contractual, legal and fiduciary duties, Mr. Miller provided substantial assistance to the State in its investigation and prosecution of the Jacobsons on whose behalf Mr. Miller had previously served as their confidential expert consultant. Mr. Miller's and RMA's confidential consultation on behalf of RQN and the Jacobsons was at the very core of the facts out of which the State's charges arise and the Jacobsons' defense to them. Mr. Miller's and RMA's confidential consultation on behalf of RQN and the Jacobsons is at the very core out of which this lawsuit arises.

The court should assign particular weight to the relationship between the two cases. A typical case in which a criminal defendant seeks to stay a civil action involves a crime victim seeking tort liability against the alleged perpetrator while the criminal case is pending. Mr. Miller and RMA are not victims of an alleged crime here. They are keenly aware, however, of the substantial overlap between this case and the pending criminal case. Having been disqualified as expert witnesses in the State criminal case due to the very conflict of interest out of which this case arises, Mr. Miller and RMA now seek to shelter their wrongdoing by forcing the Jacobsons to choose between constitutional rights: exercise their rights under the Fifth Amendment in the civil case with the factfinder

drawing an adverse inference from the invocation, or waive those rights. The Jacobsons should not be forced to have to choose. Were the cases not so interrelated, this issue would be of lesser consequence. A review of the recent discovery requests clearly establishes that dilemma is exactly what RMA has in mind and is attempting to force.

  B. <u>Status of criminal case</u>.

"A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." *Hilda M. v. Brown, No. 10-CV-02495-PAB-KMT, 2010 WL 5313755, at \*4 (D. Colo. Dec. 20, 2010)* (citing *Transworld*); *see also Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980) ("The strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned.").

Numerous courts have granted civil stays in the post-indictment context. *See, e.g., In re Worldcom, Inc. Sec. Litig.*, No. 02 CIV. 3288 (DLC), 2002 WL 31729501 at \*9 (S.D.N.Y. Dec. 5, 2002); *Colmar Distributors Inc. v. New York Post Co. Inc.*, 152 F.R.D. 36 (S.D.N.Y.1993); *In re Par Pharm., Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment"); *Midas International Corp. v. CV & G Trans. Services*, 1987 WL 18916 (N.D. Ill. Oct. 19, 1987); *Fidelity Funding of California v. Reinhold*, 190 F.R.D. 45, 48 (E.D.N.Y.1997) (staying the civil case against

-9-

the defendant who was under indictment while denying a stay as to his unindicted civil co-defendant).

The Jacobsons have been charged by criminal information and the state criminal case against them is proceeding in *State v. Wendell A. Jacobson and Allen Jacobson,* Nos. 151907103 and 151907105, Third Judicial District Court of Salt Lake City, Utah.  This factor therefore weighs heavily in favor of a stay.

      C.    <u>Private interest of plaintiffs in proceeding expeditiously weighted against prejudice to plaintiff caused by delay</u>.

RMA has some legitimate interest in the expeditious resolution of its case, but its interest is not greater than that of any other civil litigant, and thus not greater than the interests of those parties in other cases where stays have been granted.[1]  In fact, RMA's interest is significantly lessened here, because the claims arise out of and are intertwined with RMA's participation in aiding and encouraging the criminal proceedings, which are pending.

Some courts have declined to stay civil proceedings where delay would prejudice a plaintiff's interest in obtaining and enforcing a judgment against the defendant.  *See Int'l Bus. Machs Corp. v. Brown,* 857 F. Supp. 1384, 1391 (C.D. Cal 1994) (noting risk of further depletion of assets to satisfy possible judgment with passage of time).  That concern is not present in this case because RMA has not asserted claims seeking monetary relief from the Jacobsons; rather RMA is seeking injunctive and declaratory relief to enjoin the

---

[1] RMA previously entered a tolling agreement with the Jacobsons.

Jacobsons from filing state law claims against RMA in state court.[2]  Furthermore, the court lacks subject-matter jurisdiction over RMA's claims for the reasons set forth in the Jacobsons' motion to dismiss (Dkt. No. 44) and motion to remand (Dkt. No. 26).  A stay will not prejudice the court's ability to consider the jurisdictional issues; or RMA's ability to have its defenses considered on the merits at the appropriate time and in the appropriate forum, after the criminal case has concluded.

RMA's interest in expeditious resolution of its claims is also lessened by the fact that RMA instigated the filing of the criminal case against the Jacobsons by supplying their confidential information to the State for use in the prosecution, thus putting the Jacobsons in the predicament they are now in.

Finally, the advanced stage of the criminal case weighs against a findings of prejudice to RMA arising out of substantial delay.  Taking each of these issues into consideration, RMA's interests do not weigh in favor of denying a stay.

        D.     <u>Private interest of and burden on the defendants</u>.

The Jacobsons have a significant interest in "avoiding the quandary of choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case." *Transworld*, 866 F. Supp. at 1140.  This important interest outweighs RMA's interest in the expeditious resolution of its case.  See *id*.; *Hilda M. v. Brown*, 2010 WL 5313755, at *4 (D. Colo. Dec. 20, 2010).  The Jacobsons also face a significant burden of having to

---

[2] The timing of the Jacobsons' state court complaint against RMA was based on statute of limitation considerations and the expiration of the tolling agreement.  The Jacobsons would have waited to file the complaint until after resolution of the criminal case had the statute of limitations not been an issue.

proceed with parallel civil and criminal actions. These factors weigh heavily in favor of granting a stay.

    E.    Interest of the courts.

Judicial efficiency weighs in favor of granting a stay because the criminal case is nearing trial. *See Transworld*, 866 F. Supp. at 1140. Further, resolution of the criminal case may increase the possibility of settlement of the civil case, and "may reduce the scope of discovery in the civil case [as] the evidence gathered during the criminal prosecution can later be used in the civil action." *Hilda,* 2010 WL 5313755 at * 6 (citing *Transworld,* 866 F.Supp. at 1140).

Moreover, the court lacks subject matter jurisdiction over RMA's claims for the reasons set forth in the Jacobsons' motion to dismiss (Dkt. No. 44). The court has a strong interest in avoiding proceedings on the merits where it lacks subject matter jurisdiction. Under these circumstances, this factor weighs heavily in favor of granting a stay.

    F.    Public interest.

A stay of discovery in this case would not harm any public interest. Further, "[b]ecause of the overlapping issues in the criminal and civil cases, the criminal prosecution will serve to advance the public's interests at stake here," to the extent that there are any. *Hilda,* 2010 WL 5313755 at * 6 (citing Volmar Distributors, Inc. v. The New York Post Co., Inc., 152 F.R.D. 36, 40 (S.D.N.Y.1993)). Thus, the public interest does not weigh in favor of denying a stay.

    G.    Balancing of the six factors.

The inconvenience and delay to RMA that will result from a stay is outweighed by the Jacobsons' significant Fifth Amendment concerns, particularly where a stay will not

affect the court's ability to resolve the pending challenges to its subject-matter jurisdiction; will not inordinately prolong the civil case in the event that the court concludes that it has jurisdiction; and where the criminal prosecution could provide some benefit to the civil case and advance the public interests.

II. THE COURT SHOULD DETERMINE WHETHER IT HAS SUBJECT MATTER JURISDICTION BEFORE IT ALLOWS DISCOVERY ON THE MERITS TO PROCEED.

The United States Supreme Court has held that "[it] is a recognized and appropriate procedure for a court to limit discovery proceedings at the outset to a determination of jurisdictional matters . . . ." *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 79-80 (1988); *see also Donelson v. United States Through Dep't of the Interior*, 730 F. App'x 597, 603 (10th Cir. 2018). "Federal courts must determine that they have jurisdiction before proceeding to the merits." *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

Even if the court is not inclined to grant a stay to protect the Jacobsons' Fifth Amendment rights, it should nevertheless grant a temporary stay of discovery and other motion filings until the present motions that challenge the court's subject matter jurisdiction have been resolved. The Jacobsons have moved the court to dismiss RMA's complaint (Dkt. No. 44) and to remand member case no: 2:20-cv-0013 back to state court (Dkt. No. 26) for lack of subject matter jurisdiction.

Meanwhile, RMA is attempting to utilize its injunction case as a platform for doing early, out-of-sequence discovery concerning the underlying merits of the state-law

claims.³ Its discovery requests do not address jurisdictional issues; rather they seek discovery on the merits of the Jacobson's state law claims against them, and on the merits of RMA's alleged affirmative defenses to these state law claims. They seem deliberately designed to force the Jacobsons to choose between their Fifth Amendment rights and their right to pursue these civil claims.

RMA's interrogatory no. 1, requests for production nos. 1 and 3-10, and request for admission no. 1 seek information regarding the Jacobsons' confidential information that RMA received pursuant to a confidentiality agreement with Ray Quinney & Nebeker that predated the receivership, which RMA later disclosed to the State of Utah, outside of the receivership and in breach of the RQN agreement, for use in aiding the State's criminal prosecution of the Jacobsons. The Jacobsons' state law claims against RMA are based on this breach. RMA's interrogatories nos. 3, 4, and 9 seek information relating to RMA's alleged factual defense that the confidential information which they disclosed to aid the State's criminal prosecution of the Jacobsons was information RMA had obtained during the receivership.

RMA's interrogatories nos. 4, 5, 8, 10, and 11 seek information regarding RMA's alleged defense that the Jacobsons' state law claims, which arise out of RMA's wrongful acts in 2015, are "assets" that they were required to surrender under consent judgments

---

³ RMA issued discovery requests to defendants on January 22, 2020, a copy of which is attached as Exhibit 1. RMA moved the court to allow early discovery, and the court entered an order on April 7, 2020 granting this request. ([Dkt. No. 43](#)). Defendants had been of the understanding that discovery was stayed until the jurisdictional issues were decided, but lodged its objections to the individual requests on April 27.

entered on December 18, 2012 in *Securities and Exchange Commission v. Management Solutions, Inc., et al.,* Case No. 2:11-cv-01165 (D. Utah). This issue is directly addressed at pages 16-17 of defendants' motion to dismiss, and is not a factual issue.

RMA's discovery requests do not seek discovery that would aid in the court's determination of subject matter jurisdiction; rather they seek discovery on the merits of their claims and their affirmative defenses to the Jacobsons' state law claims. The court can resolve the jurisdictional issues raised in the Jacobsons' motions as a matter of law without the need for any discovery. The court should therefore rescind its April 7, 2020 order granting early discovery and enter an order staying all discovery on the merits until these jurisdictional motions are resolved.

## CONCLUSION

For these reasons, the Jacobsons request that the court rescind its April 7, 2020 order granting early discovery (Dkt. No. 43) and enter an order staying discovery, initially, until the Jacobsons' motion to dismiss (Dkt. No. 44) and motion for remand (Dkt. No. 26) are resolved. If the court concludes that it has jurisdiction after hearing these motions, it should modify the stay to keep it in place until the criminal proceedings against the Jacobsons have concluded.

DATED: April 30, 2020.

SNOW, CHRISTENSEN & MARTINEAU

By_____
Rodney R. Parker
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 30, 2020, a copy of the foregoing MOTION TO STAY DISCOVERY was filed and served via electronic notification through the CM/ECF system on the following:

> David K. Broadbent
> Doyle S. Byers
> Cory A. Talbot
> Nathan Archibald
> **HOLLAND & HART LLP**
> 222 S MAIN ST STE 2200
> SALT LAKE CITY, UT 84101
> (801) 799-5800
> dbroadbent@hollandhart.com
> dsbyers@hollandhart.com
> catalbot@hollandhart.com
> narchibald@hollandhart.com

/s/ Rodney R. Parker

4835-1416-6202, v. 3