FILED
2020 SEP 17 AM 11:52
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GIL A. MILLER, et al.,<br><br>    Plaintiffs (Consol. Defendants),<br><br>v.<br><br>WENDELL JACOBSON, et al.,<br><br>    Defendants (Consol. Plaintiffs). | **MEMORANDUM DECISION DENYING MOTIONS TO REMAND, DISMISS, AND STAY; PARTIALLY GRANTING MOTION TO COMPEL**<br><br>Consol. Case No. 2:19-cv-00956-BSJ<br><br>(Member Case No. 2:20-cv-00013-BSJ)<br><br>District Judge Bruce S. Jenkins |

## **INTRODUCTION**

This matter comes before the court on three motions filed by Consolidated Plaintiffs Wendell A. Jacobson and Allen Jacobson ("Jacobsons"): Motion to Remand[1], Motion to Dismiss,[2] and Motion to Stay.[3] The matter is also before the court on the Motion to Compel[4] filed by Consolidated Defendants Gil A. Miller, David N. Bateman, Rocky Mountain Advisory's ("Miller et al."). Broadly speaking, Jacobsons contend the case they filed in state court, which Miller et al. removed to this court, should be remanded because Jacobsons allege only state claims against Miller at al. in their personal, rather than receivership, capacities. Also, Jacobsons ask the court to stay this consolidated case, pending the outcome of criminal charges pending against them in state court. The court heard oral argument on the motions on July 9, 2020.

---

[1] ECF No. 26.
[2] ECF No. 44.
[3] ECF No. 45.
[4] ECF No. 46.

The court has carefully considered the parties' arguments, applicable law, and the relevant facts. For the reasons set forth below, the court denies Jacobons' Motion to Remand, Motion to Dismiss, and Motion to Stay. The court grants, in part, Miller at al.'s Motion to Compel.

## PROCEDURAL BACKGROUND

The court begins with a brief history of litigation involving Miller et al. and Jacobsons. Jacobons' relevant history begins in late 2011. On December 15, 2011, the court appointed a receiver, John Beckstead, to take possession of Jacobsons', and their companies', assets.[5] The court directed Mr. Beckstead to "investigate the manner in which the financial and business affairs of the [r]eceivership [d]efendants were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the [r]eceivership [e]state, as the [r]eceiver deems necessary and appropriate."[6] The court also enjoined any litigation involving Jacobsons, certain entities Jacobsons previously controlled, the receiver in his capacity as receiver, or any receivership property.[7]

In November 2012, Jacobsons entered consent decrees with the Securities and Exchange Commission.[8] Pursuant to those decrees, the court entered an order for Jacobsons to relinquish "any interest, ownership, or claim to any and all assets and/or interests in any assets [held as of December 17, 2011] and/or held in the past through December 15, 2011 . . . ."[9] Also, Jacobsons

---

[5] *Sec. & Exch. Comm'n v. Mgmt. Sols., Inc.*, 2:11cv1165 [hereinafter "Receivership"].
[6] Receivership, ECF No. 4 at 15; *see also Sec. & Exch. Comm'n v. Mgmt. Sols., Inc.*, No. 19-4090 (10th Cir. Aug. 19, 2020) (alterations omitted) (unpublished).
[7] Receivership, ECF No. 4 at 12–13.
[8] Receivership, ECF No. 655–56.
[9] Receivership, ECF Nos. 783–84.

2

each agreed to pay a civil penalty of $150,000 within two weeks.[10] When the court inquired during a December 2019 hearing, Jacobsons had not yet paid their respective penalties.[11]

Miller et al. began participating in the Receivership in 2014. On March 12, 2014, the court authorized the receiver, Mr. Beckstead at that time, to retain Defendants Mr. Miller and Rocky Mountain Advisory to assist with accounting work.[12] At the end of March 2014, the Securities and Exchange Commission ("SEC") asked the court to substitute Mr. Miller for Mr. Beckstead as receiver.[13] Beckstead had asked to be relieved of his duties to allow him to accept a mission call from his church. On April 15, 2014, the court granted the SEC's request and Mr. Miller took over duties as receiver.[14]

On May 31, 2019, the court entered an order terminating the Receivership but retained jurisdiction over certain Receivership matters:

> This Court shall retain jurisdiction over any and all matters relating to this receivership and receivership estate. To the extent any dispute arises concerning the Receiver's administration of the receivership estate, or to the extent any person or entity seeks to pursue or assert any claim or action against the Receiver or any member of the Receivership Team <u>arising out of or related to this receivership</u>, the Court shall retain jurisdiction to hear and resolve any such dispute or claim.[15]

On December 4, 2019, Miller et al. filed their Complaint in this now-consolidated action.[16] Miller et al. alleged Jacobsons intended to file a lawsuit against Miller et al. that related

---

[10] *Id.*
[11] Hr'g Tr. 44:6–21, Dec. 12, 2019 (ECF No. 19).
[12] Receivership, ECF No. 1637, 1640.
[13] Receivership, ECF No. 1771.
[14] Receivership, ECF No. 1813 (transferring "all powers, duties, rights and responsibilities over the equity receivership" to Mr. Miller, including those in the December 15, 2011 Order).
[15] Receivership, ECF No. 3521 at 13 (emphasis added). This order maintains the December 2011 litigation stay.
[16] *Miller v. Jacobson*, No. 2:19-cv-956 (D. Utah filed Dec. 4, 2019).

to their administration of the Receivership.[17] Miller et al. asked the court to enjoin the anticipated suit, declare that it violated the court's earlier orders in the Receivership, and enter contempt sanctions against Jacobsons.[18]

On December 11, 2019, Jacobsons filed their threatened suit against Miller et al. in Utah's Third District Court, alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, professional negligence, and breach of fiduciary duty.[19] On January 8, 2020, Miller et al. removed the state case to this court.[20] On February 28, 2020, the court consolidated Jacobsons' action with Miller et al.'s action, resulting in the consolidated case presently before the court.[21]

## ANALYSIS

### I. The court declines to remand or dismiss because Jacobsons attempt to recover for Miller's actions as receiver

Jacobsons ask the court to remand the lawsuit they filed against Miller et al. to state court, contending there exists no basis for federal subject matter jurisdiction because Jacobsons allege only state causes of action against Miller et al. for conduct unrelated to the Receivership. The court disagrees. A defendant in state court may remove a case to federal court if the federal court has original jurisdiction over the claims. 28 U.S.C. § 1441. Ordinarily, removal statutes are strictly construed, and all doubts are resolved against removal. *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982). To support removal jurisdiction, "the required federal

---

[17] ECF No. 2.
[18] *Id.* Miller et al. also sought a temporary restraining order, which the court denied following a hearing on the matter. *See* ECF No. 16.
[19] *Jacobson v. Miller*, No. 190909606 (UT 3d Dist. Ct. filed Dec. 11, 2019).
[20] *Jacobson v. Miller*, No. 2:20-cv-13 (D. Utah filed Jan. 8, 2020).
[21] ECF No. 25.

4

right or immunity must be an essential element of the plaintiff's cause of action" and "the federal controversy must be 'disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.'" *Id.* (quoting *Madsen v. Prudential Federal Savings & Loan Assn.*, 635 F.2d 797 (10th Cir. 1980)). In the receivership case, the parties agree that this court retained jurisdiction over "any claim or action" against Mr. Miller and other professionals assisting him with the Receivership "arising out of or related to" the Receivership.[22] They disagree only about whether Jacobsons' claims arise out of or relate to the Receivership.

Here, the action was properly removed because Jacobsons' claims relate to the Receivership and Mr. Miller's conduct as receiver. Paragraph 36 of Jacobsons' Complaint provides a clear example: "Notwithstanding his fiduciary and contractual obligations to the Jacobsons, approximately two weeks after his appointment as receiver, Mr. Miller again violated those obligations by telling investors [information about Wendell Jacobson and his operation of Receivership entities]."[23] This allegation in Jacobsons' Complaint expressly states Mr. Miller–as receiver–engaged in conduct for which Jacobsons seek to recover. Jacobsons allege that Mr. Miller's conduct, at the time he was acting as receiver and speaking with investors, violated the fiduciary and contractual duties on which Jacobsons' claims are based. Accordingly, Miller et al. properly removed the action because Jacobsons' Complaint explicitly alleges Mr. Miller acted as receiver when he engaged in conduct for which Jacobsons seek to recover.[24]

---

[22] Receivership, ECF No. 3521 at 13; *see* Hr'g Tr. 6:22–7:2, 10:1–9, July 9, 2020 (ECF No. 61).
[23] Jacobsons' Compl. ¶ 36.
[24] Likewise, the court finds it need not decide Miller et al.'s "Motion to Amend Notice of Removal" (ECF No. 27) because Jacobsons' Complaint alleges claims at odds with the court's orders in the Receivership, which is the basis Miller et al. provided in their Notice of Removal. Nonetheless, as receiver, Miller is undoubtedly "an officer or arm of the court . . . ." *Sec. &*

5

The contract to which Jacobsons point as the source of their claim of a derivative or beneficial interest is between persons other than themselves.[25] That specific contract relates to a dispute between Ray Quinney & Nebeker and the then-receiver Mr. Beckstead, who had succeeded to all of the Jacobsons' assets. That dispute was settled, releases exchanged between Ray Quinney & Nebeker and Beckstead as receiver and the payment by Ray Quinney & Nebeker of $28,590 to the receiver.[26] The reach of the releases is yet to be resolved.

### a. The court likewise declines to dismiss Miller et al.'s claims

Similarly, the court rejects Jacobsons' argument in their Motion to Dismiss that their claims do not implicate the *Barton* doctrine. While Jacobsons' Motion to Dismiss largely tracks their Motion to Remand and fails for the same reasons, it does raise an additional question regarding the so-called *Barton* doctrine. The *Barton* doctrine requires a plaintiff to seek leave of the court overseeing a receiver before suing that receiver. *Satterfield v. Malloy*, 700 F.3d 1231, 1234 (10th Cir. 2012) (citing *Barton v. Barbour*, 104 U.S. 126 (1881)). The *Barton* doctrine affords a court overseeing a trustee with exclusive jurisdiction of "claims based on alleged misconduct in the discharge of a [receiver]'s official duties absent approval from the appointing . . . court."[27] *Satterfield* at 1234.

As already discussed, Jacobsons allege Mr. Miller engaged in wrongdoing when he met with investors. Such meetings constitute part of his duties as receiver. Thus, Jacobsons' claims

---

*Exch. Comm'n v. Mgmt. Sols., Inc.*, No. 19-4090, 2020 WL 4811319, at *3 (10th Cir. Aug. 19, 2020) (quoting *Crites, Inc., v. Prudential Ins. Co. of Am.*, 322 U.S. 408 (1944)).
[25] *See* ECF No. 10, Ex. F. While Wendell Jacobson signed the agreement, he did so as president of Management Solutions, Inc.
[26] Receivership, ECF No. 1639, Ex. 1.
[27] While *Satterfield* involved a bankruptcy court overseeing its trustee, the *Barton* doctrine originated in a case brought against a railroad receiver. *Barton v. Barbour*, 104 U.S. 126 (1881).

are "based on alleged misconduct in the discharge of [Miller et al.'s] official duties." *Id.* As such, this court has exclusive jurisdiction over Jacobsons' claims under the *Barton* doctrine. Jacobsons' arguments to the contrary never address this fact: their claims challenge Miller et al.'s performance as receiver.

Additionally, Jacobsons appear to assume Mr. Miller could not have been acting as receiver when he assisted the Utah Attorney General's Office in its prosecution of Jacobsons. Jacobsons offer no authority to show this practice takes place outside Mr. Miller's role as receiver. Receivers commonly cooperate with law enforcement. *See, e.g., United States v. Holloway*, 939 F.3d 1088, 1105 n.11 (10th Cir. 2019) (declining to decide whether a receiver who furnished information to the United States could be treated as a member of the prosecution team for *Brady* purposes).[28] The Second Circuit has wondered aloud whether a receiver may be <u>required</u> in certain circumstances to report criminal activity. *See United States v. Koh*, 199 F.3d 632, 640–41 (2d Cir. 1999) ("Arguably, the receiver had a duty to report [the receivership entities' former controller]'s allegedly criminal activity to the appropriate authorities, *see* 18 U.S.C.A. § 4, and the allegations that he was motivated by personal financial gain, are irrelevant.") (footnote omitted). While the court may need to address the propriety of the fee purportedly paid to Mr. Miller, his cooperation with law enforcement appears to be consistent with his duties as receiver.

---

[28] Until the Supreme Court rejected the practice in 1987, receivers were occasionally appointed to prosecute contempt charges against insiders of entities in receivership. *See, e.g., United States v. Smith*, 936 F.2d 581 (9th Cir. 1991) (unpublished) (citing *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 790 (1987)) (reversing contempt conviction of defendant prosecuted by receiver's counsel who had also been appointed to prosecute the contempt charge).

7

## II. The court declines to stay this case because Jacobsons invoked the civil process they now seek to postpone

Jacobsons ask the court to stay discovery, on Fifth Amendment grounds, until the conclusion of Jacobsons' criminal prosecution in state court.[29] The court declines because Jacobsons initiated the civil litigation they now ask be stayed and they do not describe any deficiency with court's existing orders, which appear to adequately protect their asserted rights. "The Constitution does not generally require a stay of civil proceedings pending the outcome of criminal proceedings, absent substantial prejudice to a party's rights." *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009). In exercising its discretion to issue a stay, the court must consider a party's Fifth Amendment rights, however, "a defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Id.* (alteration omitted).

First, despite Jacobsons' failure to respond to Miller et al.'s "Motion Re Expedited Discovery,"[30] the court, on its own, entered an order prohibiting use of any discovery materials outside of the instant litigation. The court's order also permits Jacobsons to seal responsive information.[31] The sovereign prosecuting Jacobsons (the state of Utah) is not a party to these proceedings. Jacobsons did not offer any reason the court's order fails to adequately protect their asserted Fifth Amendment interest. Consequently, they fail to show discovery will impair their private interests or rights.

---

[29] Jacobsons also asked for a stay until the court decides their Motion to Remand and Motion to Dismiss. That request is moot because this order addresses the three motions simultaneously.
[30] ECF No. 34.
[31] ECF No. 43.

8

Second, Jacobsons did not cite any case in their brief, nor could they identify one when asked during oral argument, in which a civil Plaintiff obtained a stay of litigation based on purported Fifth Amendment privilege concerns. Jacobsons offer instances of criminal defendants successfully seeking a stay of a civil case in which they were also defendants facing civil claims similar to pending criminal charges. Yet those cases present more compelling circumstances for a stay. An individual who defends parallel civil and criminal litigation is involuntarily forced to choose between his Fifth Amendment rights and civil liability. That individual has no control over whether or when claims are brought against him. Jacobsons voluntarily invoked the civil process here. It seems to the court a fairly novel proposition to now ask the court to do nothing with the litigation they initiated. Thus, given the lack of impairment to their private interests and the lack of precedent supporting their request, the court denies Jacobsons' request for a stay.[32]

### III. The court grants, in part, Miller et al.'s Motion to Compel because Jacobsons offer no adequate basis to withhold responses

Jacobsons must respond to Miller et al.'s discovery requests because they offer no adequate justification for withholding the requested information. As to Jacobsons' argument that Miller et al. were not entitled to seek "early" discovery, Miller et al. correctly point out that the court already ordered discovery could begin, twice. First, in December 2019 the court expressly allowed early discovery to proceed. After Jacobsons objected to Miller et al.'s request for early discovery, the court stated:

---

[32] Additionally, while Jacobsons' counsel asks the court to stay this case pending the outcome of the criminal matter in state court, no one informed the court of any trial date in the state matter. Jacobsons may file a subsequent motion to stay if a trial date is set in the criminal matter.

9

> THE COURT: [. . .] Let's say discovery can begin, if people are available -- the 23rd is just before Christmas, and you both may want to work out something that has some impact on, at this point, [both] pending cases.
>
> MR. ALBA: We understand.[33]

Then, during a February 21 hearing, the parties again raised the issue of early discovery and the court ordered written briefing on the issue.[34] Miller et al. filed a "Motion Re Expedited Discovery,"[35] Jacobsons did not oppose that motion. Accordingly, the court entered a written order authorizing early discovery on April 7.[36] The court will not entertain the present, belated, attempt by Jacobsons to object to the timing of discovery.

### a. Jacobsons must identify the "confidential information" alleged in their Complaint

Jacobsons claim they cannot define the confidential information at issue because they do not know what Mr. Miller disclosed to state prosecutors.[37] The court is unpersuaded by Jacobsons' professed inability to define the confidential information. While Jacobsons may not know each and every disclosure by Mr. Miller, as sought by Interrogatories Six and Twelve, Jacobsons must identify the confidential personal information they provided to Miller et al. and describe any disclosure of which they are aware.

It is important for the Jacobsons to identify the purportedly confidential information. Several courts have rejected Jacobsons' argument that "side-switching" experts, including

---

[33] ECF No. 19 at 46:11–15.
[34] Mot. Consol. Hr'g Tr. 32:15–34:2, Feb. 28, 2020 (ECF No. 51).
[35] ECF No. 34.
[36] ECF No. 43.
[37] Jacobsons also argue the confidential information is relevant only to their claims against Miller et al. but not to the claims Miller et al. assert against Jacobsons. Even assuming the purportedly confidential information is only relevant to Jacobsons' removed claims, the distinction is immaterial because the court already found those claims were properly removed. *Supra* Part I.

10

accountants, should be disqualified under the same rules governing attorneys. *See, e.g., In re Ambassador Grp., Inc., Litig.*, 879 F. Supp. 237, 241 (E.D.N.Y. 1994); *English Feedlot, Inc. v. Norden Labs., Inc.*, 833 F. Supp. 1498, 1501 (D. Colo. 1993) ("The expert disqualification standard must be distinguished from the attorney-client relationship because experts perform very different functions in litigation than attorneys.").[38] Instead, these courts considered whether a client could reasonably believe a confidential relationship existed and whether the accountant, or other expert, actually received confidential information.[39] *See Ambassador* at 241.

Without Jacobsons' description of the purportedly confidential information, it is virtually impossible for Miller et al. and the court to evaluate Jacobsons' claim that Miller at al. misused confidential information. The books and records of the company are not confidential. Information known to Mr. Miller's predecessor as receiver, Mr. Beckstead, is not confidential. Nor is information Mr. Miller learned while he was receiver, even if that duplicates information he first learned from Jacobsons. Thus, Jacobsons must identify the purportedly confidential information because it is relevant to their claims.

### b. While the court does not compel information protected by the Fifth Amendment, a privilege assertion may result in negative consequences

Finally, as to any Fifth Amendment privilege, Jacobsons are correct that the Constitution ordinarily forbids compulsion of incriminating material.[40] "The Fifth Amendment allows an individual to not 'answer official questions put to him in any ... proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'"

---

[38] *English Feedlot* involved veterinary experts rather than accountants.
[39] Courts also consider whether confidentiality has been waived. *See English Feedlot* at 1504.
[40] There is an exception, not discussed here, when use immunity is granted to the person invoking the privilege. *See Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976).

11

*S.E.C. v. Smart*, 678 F.3d 850, 854 (10th Cir. 2012) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 71 (1973)). Nonetheless, such refusal to answer may result in negative consequences in a civil case. *See, e.g., Baxter v. Palmigiano*, 425 U.S. 308, 318–19 (1976) (permitting an adverse inference drawn against a defendant who invoked the Fifth Amendment during a prison-discipline hearing). Additionally, there is an open question in the Tenth Circuit as to whether a party can waive its Fifth Amendment privilege by not timely asserting it. *See United States v. A & P Arora, Ltd.*, 46 F.3d 1152 (10th Cir. 1995).

Here, it is somewhat unclear where Jacobsons' privilege assertions begin and their other objections end. Consequently, the court orders Jacobsons to respond according to the remainder of this order. To the extent Jacobsons continue to assert a Fifth Amendment privilege, the parties and the court may revisit the privilege issue, including any question of waiver. In that event, the court reminds both parties to define with specificity the scope of any disagreement.

### c. The court declines to enter sanctions because Miller et al. suffered little, if any, prejudice and Jacobson's failure to respond is mitigated by the procedural history of this case

The court denies Miller et al.'s request for sanctions. First, Miller et al. suffered no meaningful prejudice from Jacobsons' delayed responses. This case is in its infancy. There is no scheduling order, nor has any party filed an answer to either complaint.

Next, Jacobsons' confusion about the court's order in December is understandable because, when the parties subsequently raised the issue of early discovery during a February 21 hearing, the court ordered written briefing on the propriety of early discovery.[41] Once the court

---

[41] Mot. Consol. Hr'g Tr. 32:15–34:2, Feb. 28, 2020 (ECF No. 51).

entered its written order on April 7, authorizing early discovery,[42] Jacobsons responded by the April 27 deadline in that order. Accordingly, the court will not enter sanctions.

### ORDER

Based on the foregoing, the court:

DENIES Jacobsons' Motion to Remand (ECF No. 26);

FINDS MOOT Miller et al.'s Motion to Amend Notice of Removal (ECF No. 27);

DENIES Jacobsons' Motion to Dismiss (ECF No. 44);

DENIES Jacobsons' Motion to Stay (ECF No. 45); and

GRANTS IN PART AND DENIES IN PART Miller et al.'s Motion to Compel (ECF No. 46). Jacobsons must respond to the pending discovery requests within 20 days of this order.

The remaining requests in Miller at al.'s Motion to Compel are denied.

Dated this 17th day of September 2020.

BY THE COURT

_____
Bruce S. Jenkins
United States Senior District Judge

---

[42] ECF No. 43.